UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
M+J SAVITT, INC. and WYNNE SAVITT       :
WEINER,                                 :
                                        :       08 Civ. 8535 (DLC)
                 Plaintiffs,            :
                                        :       OPINION & ORDER
          -v-                           :
                                        :
JANIS SAVITT, DESIGNS BY JANIS SAVITT,  :
INC., MICHELLE SAVITT DONAHOWER,        :
MILDRED SAVITT and PAUL SAVITT,         :
                                        :
                 Defendants.            :
----------------------------------------X


Appearances:

For Plaintiffs:
Robert E. Seaman III
Peter J. Glantz
475 Park Avenue South, 26th Floor
New York, NY 10016

For Defendants:
G. Roxanne Elings
David Saenz
MetLife Building
200 Park Avenue, 34th Floor
New York, NY 10166


DENISE COTE, District Judge:

     Defendants have moved to dismiss plaintiffs' second amended

complaint.  Defendants contend that the claims asserted

derivatively on behalf of plaintiff M+J Savitt should be

dismissed for failure to plead demand or demand futility

adequately, and that certain of plaintiff Wynne Savitt's

individual claims against defendants should be dismissed for failure to state a claim.  For the reasons that follow, defendants' motion to dismiss the derivative claims is granted. Defendants' motion to dismiss Wynne's individual claims is granted as to all claims except Wynne's claim for defamation against defendant Janis Savitt.


BACKGROUND

M+J Savitt, Inc. ("M+J Savitt") is a privately held corporation organized under the laws of the State of New York, with its principal place of business located in New York City. Three siblings -- Wynne Savitt, Janis Savitt, and Michelle Savitt -- each own 27% of M+J Savitt.  Their mother, Mildred Savitt owns the other 19%.

At the time the original complaint in this action was filed, the Board of Directors of M+J Savitt consisted of Wynne and Mildred (the "Old Board").  Following a November 18, 2008 Special Shareholder Meeting ("Special Meeting"), a new Board of Directors was chosen: Paul Savitt (Mildred's husband and the siblings' father), Janis, and Michelle (collectively the "New Board").  The New Board was in place when the first and second amended complaints were filed.

Plaintiffs withdrew their original complaint in the face of a motion to dismiss, and they filed an amended complaint ("first

amended complaint") on December 22, 2008.  On February 4, 2009, this Court addressed defendants' motion to dismiss the first amended complaint at a conference with the parties.  The Court addressed only the part of the motion that pertained to requirements for derivative claims; it did not address defendants' other arguments for dismissing certain causes of action.  Plaintiffs' brief in opposition to that motion stated that when the first amended complaint was filed, "the Corporation's Board was comprised of three (3) members: Janis, Paul and Michelle Savitt (the 'New Board')."  Plaintiffs argued in that brief that "[t]he Board that is in place at the time the operative pleading is filed is the one that must be considered in determining whether a demand is excuse [sic]."  As such, this Court addressed whether Wynne had met the pleading requirements of Fed. R. Civ. P. 23.1 and New York State law for bringing her derivative claims in relation to the "New Board."

     The Court found that the first amended complaint's allegations were "far too conclusory to meet either the demand requirement or the futility requirement, either of which has to be pleaded with particularity."  Specifically, the Court found that while the complaint could be read in its entirety to plead that demand would be futile because Janis was "an interested director with respect to the transactions that are at issue," plaintiffs had not adequately pled that either Paul or Michelle

were interested "with respect to the transactions that are at issue here."  The Court therefore granted this part of defendants' motion to dismiss, and granted leave to plaintiffs to file an amended pleading to cure the defects the Court noted. The Court informed plaintiffs' that this was their final opportunity to amend, and that the purpose of this permitted amendment was to address whether the defects the Court noted in the pleading as to demand and demand futility could be cured.[1]

Plaintiffs' then filed the instant complaint, their second amended complaint, which contains many entirely new allegations. Most of the new allegations pertain to alleged misconduct on the part of Michelle and her husband Sepp Donahower that is distinct from the allegations that had previously been the core of the Wynne's derivative claims (which had primarily concerned alleged misconduct on the part of Janis).  With these new allegations of wrongdoing, the plaintiffs added Michelle and other defendants to many of the claims previously pleaded.  Plaintiffs' claims that are asserted against new defendants Sepp Donahower and Seppel, Inc. are outside the scope of the permitted amendment,

---

[1] An April 2009 trial date had been chosen on December 9, 2008 in response to the plaintiffs' request for an expedited schedule for this litigation.  As a result, discovery was ongoing as the parties litigated the adequacy of the complaint; fact discovery was due to close on February 27, 2009.  There was no suggestion at the conference therefore that the plaintiffs would be able to bring new claims or add new defendants at this late date, and no request by the plaintiffs that they be able to do so.

which was allowed solely to cure defects in the pleading of demand and demand futility as to the actions challenged in the claims of the first amended complaint, and will be stricken. Similarly, any claims newly asserted against the defendants named in the first amended complaint are also beyond the scope of the permitted amendment.  For example, the second amended complaint asserts nine causes of action against Michelle that were not previously asserted against her (as well as three new claims against Mildred and one new claim against Paul).  These new allegations of liability as to these defendants will be considered only insofar as the facts relating to these new allegations bear upon the issues of demand and demand futility as to the transactions plaintiffs challenged in their claims in the first amended complaint.  Additionally, the second amended complaint's 17th cause of action for negligence and 18th cause of action for gross negligence are now pleaded on behalf of both Wynne and M+J Savitt, whereas previously the negligence claim was only asserted on behalf of the corporation and the gross negligence claim was only asserted on behalf of Wynne.  These amendments are also outside the scope of the permitted amendment and will be stricken.  To the extent that the second amended complaint added new factual allegations to cure defects identified in the motion to dismiss the claims that were pleaded

in the first amended complaint, these allegations have been
considered and are addressed below.

The following facts are drawn from the second amended
complaint and attached exhibits, and are assumed to be true for
the purposes of deciding the motion to dismiss.  M+J Savitt is
engaged in the business of designing, manufacturing, and
wholesaling fine and semi-precious designer jewelry.  M+J Savitt
sells its products to stores such as Neiman Marcus and Saks
Fifth Avenue.

The main allegation in the second amended complaint is that
Janis Savitt used and is using M+J Savitt's trademarks and
intellectual property for her own personal benefit without the
authorization of the corporation.  The complaint alleges that
Janis, on or about December 31, 2007, formed a company called
"Designs by Janis Savitt, Inc." which uses M+J Savitt's word
mark SAVITT within its name.  Janis is using this entity to
compete with M+J Savitt.  These actions have created confusion
among consumers who do not realize that Designs by Janis Savitt
is not affiliated with M+J Savitt.

M+J Savitt sent Janis cease and desist letters concerning
her conduct on May 11, 2007 and February 26, 2008.  The May 2007
letter was signed by Wynne and Michelle Savitt.  Also in May
2007, Wynne sent Paul and Mildred a note informing them that
cease and desist letters were sent to Janis.  Wynne's note said

that Janis should respond to these letters and that the letters "should serve as a formal document to bring discussions to the table, <u>formally</u>."

The second amended complaint also alleges that Michelle, along with her husband Sepp, are using M+J Savitt "Marks, Copyrights and designs" for their own interest and in competition with M+J Savitt without authorization.  It further alleges that Michelle and Sepp created a corporate entity, Seppe1, Inc., that is competing with M+J Savitt and selling jewelry that Michelle stole from M+J Savitt.  The complaint also alleges that Michelle, upon information and belief, is incapacitated.  Michelle would frequently fail to show up for work at M+J Savitt or work for only a few hours, and she improperly paid personal expenses on her corporate credit card from M+J Savitt funds.  In addition, Michelle falsely represented to Wynne that Michelle was not going to attend the Special Meeting.

The second amended complaint also describes additional wrongdoing relating to the operation of M+J Savitt, including the following: Janis failed to sign certain factoring agreements that would allow M+J Savitt to generate capital, as well a settlement agreement between M+J Savitt and the State of New York regarding past due M+J Savitt taxes; Janis signed certain documents as "President" of M+J Savitt when she had represented

to plaintiffs that she would sign them as "Secretary"; Janis verbally abused and defamed Wynne and other M+J Savitt employees, using foul language and profanity -- specifically, Janis accused Wynne of "fucking the bookkeeper" in front of M+J Savitt employees during business hours; Janis forged Michelle's signature on a check, and accessed and changed Wynne's personal email account; and Michelle and Janis failed to keep adequate M+J Savitt inventory and financial records, purchased the wrong inventory, and used M+J Savitt petty cash for personal expenses. In addition to the items of inventory that Michelle stole from M+J Savitt, Janis stole various other items.

As to Paul Savitt, he originally funded M+J Savitt, and was the inspiration for many of its jewelry designs.  He was an "absentee" officer who was not compensated and did not sign corporate tax returns.  Both Paul and Mildred provided Janis and Designs by Janis with financial aid, including a home office in Westhampton, New York and certain antiques.  In addition, Paul and Mildred gave Janis and Designs by Janis jewelry designs, inventory, and customer information.

As for allegations against all individual defendants, the complaint states that all defendants are assisting one another in selling products that bear M+J Savitt marks to compete with M+J Savitt.  In addition, all defendants are providing each

other with the jewelry Janis stole, the jewelry Michelle stole, and other inventory and merchandise.

The second amended complaint alleges 21 causes of action against various combinations of defendants.  Claims 1-9, 12-14, 17 and 20 are brought only on behalf of M+J Savitt to redress injuries to M+J Savitt;[2] claims 10-11 and 15-16 are brought on behalf of both Wynne and M+J Savitt.  Claims 18 and 19 are brought on behalf of Wynne alone.[3]

DISCUSSION

A.  <u>Derivative Claims</u>

At the outset, it is well-settled that "[a]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation through a derivative action."  <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1101 (2d Cir. 1988) (citation omitted).  Thus, despite the fact that only the 21st cause of action in the second amended complaint is styled as a derivative claim, the claims described above that are asserting injury to

---

[2] As discussed above, while the second amended complaint seeks to newly assert Claim 17 on behalf of Wynne individually as well, that amendment is outside the scope of the permitted amendment and is stricken.

[3] As discussed above, while the second amended complaint seeks to newly assert Claim 18 on behalf of M+J Savitt as well, that amendment is outside the scope of the permitted amendment and is stricken.

M+J Savitt cannot be brought by Wynne as plaintiff except via a derivative action.[4]

"The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (citation omitted).  Under Fed. R. Civ. P. 23.1, the complaint of a shareholder bringing a derivative action must, inter alia, "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority" and "the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  The Supreme Court has stated that this rule is one of procedure that "speaks only to the adequacy of the shareholder representative's pleadings," Kamen, 500 U.S. at 96, and therefore the substance of the demand requirement and any exception for demand futility is analyzed by looking to state law.  Id. at 108-09; see also Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004) ("The substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."); Kalin

---

[4] The second amended complaint newly alleges that Wynne has authority to initiate a direct lawsuit on behalf of M+J Savitt. This allegation is outside the scope of the permitted amendment and will be stricken.

v. Xanboo, Inc., 526 F. Supp. 2d 392, 409 (S.D.N.Y. 2007)
("adequacy of the demand is governed by state law").

Under New York law, Business Corporation Law § 626(c)
similarly states that "the complaint shall set forth with
particularity the efforts of the plaintiff to secure the
initiation of such action by the board or the reasons for not
making such effort."  This statute "codified a rule of equity
developed in early shareholder derivative actions requiring
plaintiffs to demand that the corporation initiate an action,
unless such demand was futile, before commencing an action on
the corporation's behalf."  Marx v. Akers, 88 N.Y.2d 189, 193-94
(1996) (citation omitted).  "On the one hand, derivative actions
are not favored in the law because they ask courts to second-
guess the business judgment of the individuals charged with
managing the company."  Bansbach v. Zinn, 1 N.Y.3d 1, 8 (2003).
"On the other hand, derivative actions serve the important
purpose of protecting corporations and minority shareholders
against officers and directors who, in discharging their
official responsibilities, place other interests ahead of those
of the corporation."  Id.

> The purposes of the demand requirement are to (1)
> relieve courts from deciding matters of internal
> corporate governance by providing corporate directors
> with opportunities to correct alleged abuses, (2)
> provide corporate boards with reasonable protection
> from harassment by litigation on matters clearly
> within the discretion of directors, and (3) discourage

"strike suits" commenced by shareholders for personal
gain rather than for the benefit of the corporation.

Marx, 88 N.Y.2d at 194; see also Kamen, 500 U.S. at 96 ("The

purpose of the demand requirement is to afford the directors an

opportunity to exercise their reasonable business judgment and

waive a legal right vested in the corporation in the belief that

its best interests will be promoted by not insisting on such

right." (citation omitted)).

In New York, demand is excused for futility under the

following circumstances:

> (1) Demand is excused because of futility when a
> complaint alleges with particularity that a majority
> of the board of directors is interested in the
> challenged transaction.  Director interest may either
> be self-interest in the transaction at issue (see,
> Barr v. Wackman, [36 N.Y.2d 371,] 376 [1975] [receipt
> of "personal benefits"]), or a loss of independence
> because a director with no direct interest in a
> transaction is "controlled" by a self-interested
> director.  (2) Demand is excused because of futility
> when a complaint alleges with particularity that the
> board of directors did not fully inform themselves
> about the challenged transaction to the extent
> reasonably appropriate under the circumstances.  The
> long-standing rule is that a director "does not exempt
> himself from liability by failing to do more than
> passively rubber-stamp the decisions of the active
> managers.  (3) Demand is excused because of futility
> when a complaint alleges with particularity that the
> challenged transaction was so egregious on its face
> that it could not have been the product of sound
> business judgment of the directors.

Marx, 88 N.Y.2d at 200-01 (citation omitted).

"Directors are self-interested in a challenged transaction

where they will receive a direct financial benefit from the

transaction which is different from the benefit to shareholders generally." Id. at 202.  "A charge of interest must be made with particularity.  Simply naming a majority of the board as defendants with conclusory allegations of wrongdoing or control is insufficient to circumvent the requirement of demand." Bansbach, 1 N.Y.3d at 11.  Likewise, "[t]he bare claim that the directors . . . should be viewed as interested because they are substantially likely to be held liable for their actions is not enough."  Wandel ex rel. Bed Bath & Beyond, Inc. v. Eisenberg, 871 N.Y.S.2d 102, 105 (1st Dep't 2009) (citation omitted). "[A]bsent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence [in the dealings complained of] are insufficient to render demand futile," Lewis v. Graves, 701 F.2d 245, 248 (2d Cir. 1983) (interpreting Fed. R. Civ. P. 23.1), though "[p]articular allegations of formal board participation in and approval of active wrongdoing may . . . suffice to defeat a motion to dismiss."  Barr v. Wackman, 36 N.Y.2d 371, 381 (1975); see also Brewster v. Lacy, 805 N.Y.S.2d 56, 57 (1st Dep't 2005) (finding demand not futile and distinguishing situation where "board members . . . were clearly aware of alleged practices, including illegal ones, that were complained of over a lengthy period, and consciously chose to refrain from taking action over an inordinate amount of time").

In applying these standards to the instant motion, the parties seem unclear as to whether to look to the Old or New Board.  As discussed above, plaintiffs' prior briefing conceded that the proper board to look to is the one in place at the time the operative pleading is filed, which in this case is the New Board.  See also Brody v. Chemical Bank, 517 F.2d 932, 934 (2d Cir. 1975) (when board in place changed between the filing of first and second complaint, proper board for assessing demand and demand futility of the new operative complaint was the new board).[5]  Thus, on the instant motion, the issues of demand and demand futility must be addressed with respect to the New Board.[6]

_____

[5] While Harris v. Carter, 582 A.2d 222, 230-31 (Del. Ch. 1990), cast doubt on this aspect of Brody, the circumstances at issue in Harris do not apply in this case.  For one, this case involves New York law, not Delaware law.  More significantly, the Delaware courts have explained that the exception described in Harris that would excuse a derivative plaintiff from having to make a new demand (or show it would be futile) when filing an amended derivative complaint after a new board of directors is installed applies only if "first, the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint."  Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. Super. Ct. 2006).  Additionally, "where a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed."  Id.  In the instant case, there has been no previous well-pleaded derivative complaint, and as such, the relevant board for assessing the demand inquiry is the

In finding that plaintiffs' first amended complaint did not adequately plead demand futility, this Court found that that complaint, taken as a whole, could be read to show that Janis was an interested director in the transactions at issue in this litigation under the standards discussed above, but that such a showing had not been pled with particularity as to Michelle or Paul.  Upon amendment, plaintiffs add new allegations describing Michelle's use of M+J Savitt's intellectual property and inventory for her own benefit.  These new allegations, however, do not adequately show how Michelle is an interested director with respect to the transactions the litigation seeks to challenge involving Janis's use of M+J intellectual property to benefit herself and compete with the corporation.  Plaintiffs' efforts to link these two separate sets of transactions are entirely conclusory (e.g., the allegation that all defendants are "assisting" one another in selling products that compete with M+J Savitt), and simply do not allege with sufficient particularity how Michelle is an interested director as to Janis's alleged misuse of M+J Savitt intellectual property and

---

one in place at the time of the filing of the second amended complaint.

[6] Plaintiffs' allegations in the second amended complaint that because the Special Meeting was invalid, the Old Board was actually in place at the time of the filing of the second amended complaint, are outside the scope of the permitted amendment and will not be considered.

inventory, which is the conduct this litigation seeks to challenge.  Additionally, plaintiffs also do not allege with sufficient particularity that Michelle is an interested director by virtue of her being under another director's control.

As for the third member of the Board, plaintiffs have alleged no facts demonstrating that Paul is deriving any personal financial benefit from any of Janis' actions, nor any facts that he is under the control of anyone else.  As such, plaintiffs have not pled with particularity that Paul is "interested" in the transactions that plaintiffs seek to have the corporation challenge.  Plaintiffs' brief in opposition fails to even argue that Paul was an interested director.  Thus, Wynne has simply not pled with the requisite particularity that a majority of the New Board was interested with respect to the conduct that she seeks to challenge via this derivative suit, i.e., Janis's misuse of the corporation's intellectual property for personal gain.  Simply naming Paul as a defendant and alleging claims of breach of fiduciary duty and negligence for not stopping this conduct are insufficient to establish interest.

Plaintiffs have also failed to show that demand is excused because "the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances."  Marx, 88 N.Y.2d at 200.

16

The second amended complaint conclusorily asserts that various defendants, including members of the New Board, did not inform themselves of the transactions alleged in the complaint.  This contention, however, is not pled with particularity; there are no specific allegations in the complaint that demonstrate that board members simply "rubber-stamped" the decisions of more active managers by failing to inform themselves of the relevant dealings.  Id.; see also Lewis, 701 F.2d at 249 ("bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility").  Vague allegations that the board was willfully blind do not fill this void.  Plaintiffs have not pleaded with any particularity how the board failed to inform itself to the proper extent of the complained of conduct.  In fact, plaintiffs' brief in opposition to the instant motion does not even address this prong of the Marx test as to Paul, but only claims that Michelle failed to inform herself, despite this prong's focus on actions of the board as a whole.

Additionally, plaintiffs' claims as to this prong of the demand futility test are belied by the other claims in the complaint.  As to the core transactions that Wynne seeks to challenge on the corporation's behalf -- Janis's use of M+J Savitt intellectual property and inventory to compete with the corporation -- the complaint alleges that the defendants, including the New Board members, induced and encouraged such

actions with full knowledge of "M+J Savitt's rights in and to"
the intellectual property.  Thus, plaintiffs' argument that the
Board failed to inform themselves fully to the appropriate
extent fails.

Finally, plaintiffs have not alleged with
particularity that demand should be excused because "the
challenged transaction[s were] so egregious on [their] face
that [they] could not have been the product of sound
business judgment of the directors."  Marx, 88 N.Y.2d at
200-01 (citation omitted).  Plaintiffs' brief argues that
certain of Michelle's conduct, such as stealing inventory,
was so egregious that it could not be the product of sound
business judgment.  Plaintiffs' argument misses the point.
The inquiry is not whether Michelle's individual conduct
was egregious, but rather it is whether the board's action
(or inaction) in response to the conduct this litigation
seeks to challenge –- Janis's misuse of M+J Savitt's
intellectual property and inventory -- could not be the
product of business judgment.  See, e.g., Wandel, 871
N.Y.S.2d at 106 (describing case where demand found futile
where "factual allegations drew a picture of a backdating
process so open and egregious as to preclude the
possibility that issuance and approval of those options
could constitute an appropriate exercise of business

judgment on the part of the board of directors" (citation
omitted)); see also Marx, 88 N.Y.2d at 202 (finding that
"[t]he complaint does not allege particular facts in
contending that the board failed to . . . exercise its
business judgment in" taking challenged action).
Plaintiffs do not plead with sufficient particularity facts
demonstrating that the board's failure to take action was
not the product of sound business judgment.  Ultimately,
plaintiffs have not shown that demand on the New Board
would have been futile.[7]


2.   Plaintiffs' Alleged Demands

     Plaintiffs allege in their second amended complaint that
they made demands on the Old and New Board.  This bare
allegation, however, is completely insufficient to satisfy the
heightened pleading standards of Fed. R. Civ. P. 23.1 and NY BCL
§ 626(c), which both require plaintiffs to plead their demand
efforts with particularity.  The only specific communication to
which the plaintiffs point is a May 17, 2007 letter from Wynne
to Mildred and Paul alerting them to certain of Janis's alleged

---

[7] Plaintiffs seem to recognize that they did not plead demand
futility adequately, as they explain in papers on a separate
motion that they attempted to voluntarily dismiss this action
without prejudice "based upon an independent analysis of the
challenged futility issue, as well as considering whether the
demand, required for the shareholder derivative action, was
proper."

misdeeds and stating that the letter was a formal document to

"bring discussions to the table."  Even assuming this letter was

sent to all of the board members, the letter simply asks to

raise issues for discussion, and states that a response is

requested only from Janis.  This letter cannot be construed as

an attempt to get the board to initiate this action, and

therefore plaintiffs' have not pled that a demand was made on

the board with sufficient particularity.[8]  Because plaintiffs

have not pled demand or demand futility with sufficient

particularity, the claims brought derivatively by Wynne to

redress injury to M+J Savitt are dismissed.[9]

---

[8] While the instant motion to dismiss was pending, plaintiffs
advised the Court that Wynne had made a formal demand on the New
Board dated March 4, 2009.  This demand, however, does not help
their position on the instant motion to dismiss, because, as
discussed above, the purpose of the demand requirement is to
give the corporation the opportunity to respond to the
challenged actions prior to filing suit.  See Bansbach, 1 N.Y.3d
at 4 ("Because a derivative action is brought on the
corporation's behalf, the law generally requires that demand
first be made on the board of directors to pursue the claim."
(Emphasis supplied)); see also In re Omnicom Group Inc. S'holder
Derivative Litig., 842 N.Y.S.2d 408, 410 (1st Dep't 2007)
(explaining that Court of Appeals in Marx "emphasized that pre-
suit demand is the rule, that excusing demand is the exception,
and that the exception should not be permitted to swallow the
rule" (emphasis supplied)).

[9] Because the derivative claims are dismissed on this ground, it
is unnecessary to reach defendants' argument that dismissal is
appropriate because of inadequate verification of the pleadings.

B.   Wynne's Individual Claims

The complaint contains six causes of action asserted by Wynne for injuries to herself, as opposed to M+J Savitt: breach of contract, unjust enrichment, defamation, fraud, gross negligence, and intentional infliction of emotion distress. Defendants move to dismiss these claims for failure to state a claim upon which relief can be granted.  While the federal claims in this action have been dismissed as discussed above, this case is on the eve of trial, discovery has been completed, and the remaining state law claims do not present novel issues of state law.  Thus, this Court will exercise its discretion to exercise supplemental jurisdiction over these remaining state law claims.  See Adams v. Suozzi, 517 F.3d 124, 129 (2d Cir. 2008); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122-23 & n.6 (2d Cir. 2006).

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Under the pleading standard set forth in Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

A court considering a Rule 12(b)(6) motion applies a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### 1.  Breach of Contract

The elements of a breach of contract claim under New York law are as follows: (1) the existence of an agreement; (2)

adequate performance of the contract by the plaintiff; (3)
breach of contract by the defendant; and (4) damages.  See
Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375
F.3d 168, 177 (2d Cir. 2004); see also Harsco Corp. v. Segui, 91
F.3d 337, 348 (2d Cir. 1996).  "[A] company's certificate of
incorporation and by-laws in substance are a contract between
the corporation and its shareholders and among the shareholders
inter se."  Management Techs., Inc. v. Morris, 961 F. Supp. 640,
646 (S.D.N.Y. 1997).

In the first amended complaint, Wynne asserted that Janis
and Paul were liable to her for breach of contract.[10]  She
claimed that M+J Savitt's certificate of incorporation and
bylaws were contracts between M+J Savitt shareholders, that she
had performed under the contracts, and that by the acts
described in the complaint Janis and Paul had breached these
contracts.  Wynne's allegations fail to state a claim for breach
of contract, as they do not allege what provision or provisions
of the contracts the defendants breached by virtue of their
actions.  Simply conclusorily alleging that all of the actions
described previously in the complaint were a breach of these
contracts generally is insufficient to plead the element of
breach beyond a speculative level.

_____

[10] Wynne's assertions of this claim in the second amended
complaint against additional defendants are beyond the scope of
the permitted amendment and are stricken.

Wynne's new allegation in the second amended complaint that Janis and Paul breached the contract by breaching the implied covenant of good faith and fair dealing cannot save this claim. "Integral to a finding of a breach of the implied covenant [of good faith and fair dealing] is a party's action that directly violates an obligation that may be presumed to have been intended by the parties." M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990); see also Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407-08 (2d Cir. 2006).  The implied covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted).  Plaintiffs have not described the provisions of the contracts that allegedly were breached, nor have they pled what obligations and rights can be presumed to have been intended from the contracts' substantive provisions.  As such, plaintiffs' fail to state a claim for breach on this theory, and defendants' motion to dismiss this claim is granted.

2.  Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2)

at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Id. (citation omitted). The essence of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). To bring such a claim, the plaintiff must have bestowed the benefit on the defendant. See Aymes v. Gateway Demolition Inc., 817 N.Y.S.2d 233, 234 (1st Dep't 2006). It is not sufficient for defendant to receive some indirect benefit -- the benefit received must be "specific and direct" to support an unjust enrichment claim. Kaye, 202 F.3d at 616.

In the first amended complaint, Wynne alleged that Janis was unjustly enriched by her use of M+J Savitt intellectual property and inventory. Wynne claims in the second amended complaint that she personally lent M+J Savitt hundreds of thousands of dollars, and that Janis was unjustly enriched by not having to make such payments.[11] The benefit conferred by

---

[11] Plaintiffs' assertion of this claim against additional defendants is outside the scope of the permitted amendment.

Wynne in this situation, however, went directly to M+J Savitt;
Wynne does not assert that her loans were made to Janis.
Moreover, she does not allege that Janis was under any
obligation to make similar payments to M+J Savitt such that
Wynne's loan relieved her of those obligations and thereby
conferred a benefit on them for which equity requires
restitution.  See id. (overturning verdict finding unjust
enrichment where plaintiff "offered no evidence demonstrating
that [defendant] actually received any portion of the loan, nor
did she show that the loan relieved [defendant] of any financial
obligations for which she otherwise would have been
responsible")

Wynne's additional allegations on this claim in the second
amended complaint state that Janis improperly used M+J Savitt
property and money for her personal use, while Wynne did not
engage in such acts.  The fact that Wynne did not engage in this
conduct, however, is insufficient to plead that Wynne herself
conveyed some sort of benefit on defendants that in equity
should be hers.  Finally, Wynne's claims that Janis's use of M+J
Savitt's intellectual property and inventory hurt the value of
Wynne's stock and that she was unjustly enriched by such use
again do not allege any benefit that Wynne, as opposed to M+J
Savitt, conferred upon Janis.  Thus, Wynne has failed to state a
claim for unjust enrichment.

26

3.   Defamation

"Under New York law, the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault and it must either cause special harm or constitute defamation per se."  Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d Cir. 2003) (citation omitted); see also Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001) (spoken defamation is slander and "[t]he elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege" (citation omitted)).

Wynne alleges that Janis defamed her by falsely accusing Wynne of "fucking the bookkeeper" in front of M+J Savitt employees on "several occasions" during normal business hours.[12] Defendants move to dismiss the claim on two grounds: that it is outside of the one year statute of limitations and that it was

---

[12] The additional allegations of defamation are asserted on behalf of, and for injury to, M+J Savitt, and therefore cannot be brought derivatively by Wynne for the reasons discussed above.

not sufficiently pleaded with specificity as to the time, manner, and persons to whom it was published.

As for the first contention, plaintiffs argue that the statement was made on multiple occasions and that defendants "know[]" it was made within the statute of limitations.  It is unclear from the complaint when the statement was made and therefore whether it was within the statute of limitations.  A statute of limitations defense is an affirmative defense upon which the defendants bear the burden of proof.  See Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995).  Because the allegations of the complaint do not clearly demonstrate the claim is time-barred, it will not be dismissed on this ground.

As for the second contention, while it is true that defamation plaintiffs in New York must plead the particular words complained of and "must allege the time, place and manner of the false statement and . . . specify to whom it was made," Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999), "a defamation action brought in federal court is governed by Fed. R. Civ. P. 8, which requires averments to be simple, concise, and direct, and not by such a state pleading requirement . . . ." Odom v. Columbia Univ., 906 F. Supp. 188, 196 (S.D.N.Y. 1995) (citation omitted); see also Hogan v. Wal-Mart Stores, Inc., 167 F.3d 781, 783 (2d Cir. 1999) (federal law governs matters of procedure).  Wynne's allegation that Janis

made her statement on several occasions, in front of M+J Savitt
employees during business hours, is sufficient to put defendants
on notice of the claim.  Therefore, the motion to dismiss
Wynne's defamation claim against Janis is denied.


    4. Fraud

    "The elements of fraud under New York law are: (1) a
misrepresentation or a material omission of material fact which
was false and known by defendant to be false, (2) made for the
purpose of inducing the plaintiff to rely on it, and (3)
justifiably relied upon by the plaintiff, (4) who then suffered
an injury as a result of such reliance." City of New York v.
Smokes-Spirits.Com, Inc., 541 F.3d 425, 454 (2d Cir. 2008)
(citation omitted).  "[A]llegations of third-party reliance
. . . are insufficient to make out a common law fraud claim
under New York law." Id.  Additionally, a claim for fraud "may
be predicated on acts of concealment where the defendant had a
duty to disclose material information." Id. (citation omitted).
    "Federal Rule of Civil Procedure 9(b) sets forth a
heightened pleading standard for allegations of fraud: 'In all
averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity.'" Lerner
v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  Under
Rule 9(b), "the complaint must: (1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Id. (citation omitted).  While, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations. . . . [P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent." Id. (citation omitted).

Most of the allegations in the second amended complaint allege conduct that purportedly defrauded M+J Savitt, causing injuries to the corporation.  Wynne cannot assert such claims in this action for the reasons discussed above.  In addition, most of the allegations simply allege wrongful conduct on the part of defendants, such as the claims that defendants have converted M+J Savitt inventory and are competing with M+J Savitt, and are completely devoid of any alleged misrepresentations and reliance, and as such fail to state a claim for fraud.  The allegation that "[d]efendants, in concert and cooperation with one another, made material misrepresentations and omissions to Plaintiffs with respect to their abilities and intentions on acting and serving as shareholders and corporate officers" falls

far short of the heightened pleading requirements for fraud discussed above.

The only statement alleged that comes close to fulfilling the pleading requirements for defrauding Wynne is the allegation that Michelle falsely represented to Wynne that Michelle was not going to attend the Special Meeting, and that Wynne relied on this representation to her detriment in believing that without Michelle, no quorum would be constituted.  Even this statement, however, fails to meet the pleading requirements for fraud, as it does not allege when and where Michelle made this statement, nor does it allege facts that give rise to a strong inference of fraudulent intent.  Thus, defendants' motion to dismiss the claim for fraud is granted.


    5.  Gross Negligence

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  Id. at 286 (citation omitted).  Gross negligence is "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  American Telephone and Telegraph Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996) (citation omitted).

In the first amended complaint, Wynne's claim for gross negligence simply alleged that defendants' actions that had been described earlier in the complaint were "wanton, reckless, malicious and grossly negligent."  The second amended complaint newly alleges that defendants owed fiduciary duties to Wynne as a minority shareholder that were breached.

> "[A] shareholder, even a sole shareholder or one in a closely held corporation, typically does not have standing to sue for injuries to the corporation itself.  However, where a defendant owes an independent duty to the shareholder and the shareholder and the defendant are in privity, the shareholder may sue for damages caused by the defendant's negligence which results in injury that is personal to the shareholder and independent of the damage caused to the corporation.  Often, such damages consist of loss in value of the plaintiff's shares in the corporation."

Lawrence Ins. Group, Inc. v. KPMG Peat Marwick L.L.P., 773 N.Y.S.2d 164, 166 (3d Dep't 2004) (citation omitted) (emphasis supplied); see also Barbour v. Knecht, 743 N.Y.S.2d 483, 491 (1st Dep't 2002) ("Majority shareholders and directors of a close corporation stand in a fiduciary relationship with the corporation and minority stockholders and are required to exercise the utmost good faith.  Since defendant . . . is a close corporation, plaintiff's complaint that she and the other minority shareholders have been frozen out of the management of the corporation asserts a cognizable wrong." (citation omitted)).

Even assuming plaintiffs have adequately pled an independent duty owed by defendants to Wynne by virtue of her status as a minority shareholder, the second amended complaint is still deficient as to this cause of action. Plaintiffs simply state that all of the "Challenged Transactions" that are listed later in the second amended complaint (and the failure to address those transactions) demonstrate gross negligence on the part of defendants. Simply referring to 37 asserted wrongful actions, taken by different defendants and at different times, does not adequately plead how each or any of these actions (or failure to act in response) breached a specific duty, and furthermore how that particular breach meets the high standard for gross negligence. Additionally, the "Challenged Transactions" are generally the same wrongful acts upon which plaintiffs based their claims of injury to M+J Savitt. Plaintiffs have not adequately pleaded which of these acts that caused injury to M+J Savitt also caused an "injury that is personal to [Wynne] and independent of the damage caused to the corporation." Lawrence, 773 N.Y.S.2d at 166. As such, plaintiffs have failed to state a claim for gross negligence, and the motion to dismiss the claim is granted.

6.   <u>Intentional Infliction of Emotional Distress</u>

"Under New York law, a claim of intentional infliction of emotional distress requires: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."   <u>Conboy v. AT & T Corp.</u>, 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted).   "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy."   <u>Id.</u> (citation omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."   <u>Id.</u> (citation omitted).

Courts have sustained claims of intentional infliction of emotional distress where the claims "involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." <u>Stuto v. Fleishman</u>, 164 F.3d 820, 828 (2d Cir. 1999); <u>see also</u> <u>Eves v. Ray</u>, 840 N.Y.S.2d 105, 106-07 (2d Dep't 2007) (claim sustained where evidence showed a "deliberate and malicious campaign of harassment or intimidation" including threatening the defendant both physically and financially, and stalking him

"despite the fact that the defendant had obtained a temporary order of protection" (citation omitted)).  The New York Court of Appeals, however, has indicated that it is unlikely to recognize claims for intentional infliction of emotional distress where other tort remedies are available.  See Fischer v. Maloney, 43 N.Y.2d 553, 557-58 (1978); see also Herlihy v. Metropolitan Museum of Art, 214 A.D.2d 250, 263 (1st Dep't 1995) ("plaintiff's cause of action for intentional infliction of emotional distress must . . . fail because it falls within the ambit of other traditional tort liability which, in this case, is reflected in plaintiff's causes of action sounding in defamation").

Wynne asserts this cause of action against Janis and Paul. As to Janis, Wynne alleges, as described above, that Janis told Wynne that she was "fucking the bookkeeper" in front of M+J Savitt employees.  Wynne also states that Janis has repeatedly "communicated to Wynne Savitt and her family members her intention to cause them severe bodily injury to such an extent that Wynne Savitt has sought to file a criminal restraining order against Janis."  As for Paul, he told Wynne she was "out of his estate" and has prevented Wynne from visiting her mother. The complaint alleges generally that both Paul and Janis have made "vile, offensive, defamatory, lewd and morally reprehensible statements and representations about" Wynne.

The statements and actions attributed to Paul regarding his estate and Mildred do not meet the rigorous standard for asserting a claim for intentional infliction of emotional distress as a matter of law.  Wynne's contention that Janis and Paul made certain unspecified vile and morally reprehensible statements about Wynne is too vague and conclusory to state a claim for intentional infliction of emotional distress.  As such, defendants' motion to dismiss this claim will be granted as to Paul.

As for Janis's actions, the statement regarding the bookkeeper, as discussed above, falls within the ambit of her claim for defamation, and thus Wynne's intentional infliction of emotional distress claim based on that statement fails. Additionally, the statement, while offensive, is not so outrageous as to satisfy the rigorous standard for asserting this claim.  Wynne's allegations of Janis's threats of bodily harm are too vague and conclusory, in the context of this heated dispute between family members who are involved in a close corporation, to be said to be so outrageous and extreme such as to constitute intentional infliction of emotional distress. Thus, defendants' motion to dismiss Wynne's claim for intentional infliction of emotional distress as to Janis is also granted.

CONCLUSION

Defendants' February 14, 2009 motion to dismiss is denied as to plaintiff Wynne Savitt's claim for defamation against Janis Savitt, and it is granted with prejudice as to all other claims.  A scheduling order shall govern further proceedings on the remaining defamation claim.

SO ORDERED:

Dated:    New York, New York
          March 17, 2009

                                    DENISE COTE
                         United States District Judge

37